UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SONYA VILLARREAL, <br><br> Plaintiff, <br><br> v. <br><br> CREDIT CONTROL, LLC, AND OLIPHANT FINANCIAL, LLC, <br><br> Defendants. | Case No: 1:23-cv-1013 <br><br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff Sonya Villarreal, by and through the undersigned counsel, complains, states, and alleges against defendants Credit Control, LLC and Oliphant Financial, LLC, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d). The Court has supplemental jurisdiction of any state law claims pursuant to 28 U.S.C. §1367.

3. This court has jurisdiction over defendants Credit Control, LLC and Oliphant Financial, LLC because they regularly conduct and transact business in this state, Credit Control, LLC and Oliphant Financial, LLC are located in this District, part of the conduct complained of herein occurred in this Judicial District, and Plaintiff resides in this District.

4. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because a substantial part of the conduct complained of herein occurred in this Judicial District.

1

## PARTIES

5.  Plaintiff Sonya Villarreal ("Plaintiff") is a natural person who is a citizen of the State of Texas residing in McDade, Texas.

6.  Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

7.  Defendant Credit Control, LLC ("CCLLC") is a company existing under the laws of the State of Missouri, with its principal place of business in Earth City, Missouri.

8.  CCLLC has transacted business within this state as is more fully set forth hereinafter in this Complaint.

9.  CCLLC regularly collects or attempts to collect debts asserted to be owed to others.

10. CCLLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

11. The principal purpose of CCLLC's business is the collection of such debts.

12. CCLLC uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

13. CCLLC is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

14. Defendant Oliphant Financial, LLC ("Oliphant") is a company existing under the laws of the State of Florida, with its principal place of business in Sarasota, Florida.

15. Oliphant has transacted business within this state as is more fully set forth hereinafter in this Complaint.

16. Oliphant regularly collects or attempts to collect debts asserted to be owed to others.

17. Oliphant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

18. The principal purpose of Oliphant's business is the collection of such debts.

19. Oliphant uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

20. Oliphant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

21. CCLLC and Oliphant hereinafter are referred to as the "Defendants."

## FACTUAL ALLEGATIONS

22. Plaintiff maintained a personal account with LendingClub ("LendingClub").

23. Due to financial difficulties, Plaintiff began to fall behind on payments owed on the account (the "alleged debt").

24. Thereafter, Plaintiff retained attorneys Fair Credit Law Group, LLC to represent her with respect to the alleged debt.

25. On November 24, 2020, and December 29, 2020, Fair Credit Law Group, LLC notified Credit One Bank of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease ("the Letters of Representation").

26. The Letters of Representation set forth Plaintiff's attorneys' name and address.

27. Thereafter, on an exact date known only to Oliphant, the alleged debt was purportedly sold, transferred, and/or assigned to Oliphant for the purposes of collection.

28. It is standard practice, when debts are sold and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

29. It is standard practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney

3

representation letters and/or cease and desist letters.

30. Oliphant was notified by LendingClub of Plaintiff's attorney's representation in the sale file(s) or the sale file name included a notation which informed Oliphant that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

31. Oliphant was notified by LendingClub of the cease and desist in the sale file(s) or the sale file name included a notation which informed Oliphant that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

32. Thereafter, on an exact date known only to Oliphant and CCLLC, the alleged debt was transferred, assigned, or otherwise placed with CCLLC for the purposes of collection.

33. As part of its utilization of CCLLC, Oliphant conveyed information concerning Plaintiff and the alleged debt to CCLLC by electronic means.

34. The information conveyed by Oliphant to CCLLC, which, upon information and belief, was viewed by employees of CCLLC, contained Plaintiff's personal and private information including personal identifying data, among other things.

35. Notwithstanding the Letters of Representation, in an effort to collect the alleged debt, CCLLC contacted Plaintiff via telephone on March 16, 2023 (the "March Telephone Call").

36. Plaintiff received and answered the March Telephone Call.

37. The Ferrer Law Firm, PA did not consent to CCLLC's direct communication with Plaintiff.

38. CCLLC did not contact Plaintiff's attorney.

39. CCLLC did not send any letters concerning the alleged debt to Plaintiff's attorney.

40. CCLLC did not attempt to communicate at all with Plaintiff's attorneys concerning

the alleged debt.

41. It is standard practice for creditors and debt collectors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

42. It is standard practice, when debts are sold and/or assigned to downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

43. It is standard practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

44. Upon information and belief, CCLLC had actual notice of the Letters of Representation.

45. Upon information and belief, CCLLC had actual notice of the Letters of Representation either from the placement file or through a client portal provided to CCLLC.

46. Alternatively, if CCLLC did not have actual notice of the Letters of Representation, then CCLLC was willfully blind to the fact that the alleged debt was subject to the Letters of Representation.

47. Alternatively, if CCLLC did not have actual notice of the Letters of Representation, then CCLLC was negligent and/or lacks sufficient policies and procedures in place to identify alleged debts that are subject to attorney representation letters and/or cease and desist letters.

48. CCLLC has a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite having actual notice of attorney representation letters and/or cease and

desist letters related to the alleged debts.

49. CCLLC has a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite there being attorney representation letters and/or cease and desist letters from consumers' attorneys related to the alleged debts.

50. CCLLC demanded payment on the alleged debt during the March Telephone Call.

51. Thereafter, during the March Telephone Call Plaintiff informed the CCLLC representative that Plaintiff was represented by an attorney with respect to the alleged debt.

52. Notwithstanding the Letters of Representation and after Plaintiff informed CCLLC that Plaintiff was represented by an attorney with respect to the alleged debt during the March Telephone Call, in an effort to collect the alleged debt, CCLLC offered Plaintiff a settlement on the alleged debt in the amount of $2,904.00.

53. During the March Telephone Call, CCLLC did not inform Plaintiff that CCLLC was calling on behalf of Oliphant, but rather stated, or otherwise implied, CCLLC was calling on behalf of LendingClub.

54. The acts of the Defendants as described in this Complaint were performed by Defendants or on Defendants' behalf by its owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to "Defendants" in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

55. Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

56. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the

alleged debt and other alleged debts.

57. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted economic harm.

58. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

59. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff to be sued.

60. A favorable decision herein would serve to deter Defendants from further similar conduct.

## FIRST COUNT
## Violation of 15 U.S.C. §§ 1692c(b) and 1692f

61. Plaintiff repeats and realleges paragraphs 1 to 60 as if fully restated herein.

62. The Plaintiff is a "consumer" as that term defined by the FDCPA.

63. CCLLC is a "debt collector" as that term is defined by the FDCPA.

64. Oliphant is a "debt collector" as that term is defined by the FDCPA.

65. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

66. The March Telephone Call is a "communication" as that term is defined by the FDCPA.

67. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

68. 15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

7

69. The third-party vendor does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

70. Oliphant's conveyance of Plaintiff's personal and private information to CCLLC is a "communication" as that term is defined by the FDCPA.

71. Plaintiff never consented to Oliphant's communication with the third-party vendor concerning the alleged Debt.

72. Plaintiff never consented to Oliphant's communication with the third-party vendor concerning Plaintiff's personal and/or confidential information.

73. Plaintiff never consented to Oliphant's communication with CCLLC concerning Plaintiff's personal and/or confidential information.

74. Plaintiff never consented to Oliphant's communication with anyone concerning the alleged Debt or concerning Plaintiff's personal and/or confidential information.

75. Upon information and belief, Oliphant has utilized a third-party vendor for these purposes thousands of times.

76. Oliphant utilizes a third-party vendor in this regard for the sole purpose of maximizing its profits.

77. Oliphant utilizes a third-party vendor without regard to the propriety and privacy of the information which it discloses to such third-party.

78. Oliphant utilizes a third-party vendor with reckless disregard for the harm to Plaintiff and other consumers that could result from Oliphant's unauthorized disclosure of such private and sensitive information.

79. Oliphant utilizes a third-party vendor with reckless disregard for Plaintiff's right to privacy.

80. Oliphant utilizes a third-party vendor with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

81. Oliphant violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged debt to the third-party vendor.

82. 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

83. The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

84. Oliphant disclosed Plaintiff's private and sensitive information to the third-party vendor.

85. Oliphant violated 15 U.S.C. § 1692f when it disclosed Plaintiff's private and sensitive information to the third-party vendor.

86. As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during the debt collection process were inadequate to protect consumers. 15 U.S.C. § 1692(a)-(b).

87. Specifically, Congress sought to protect consumers from communications by debt collectors to third parties. See S. Rep. No. 95-382, at 4 (1977) reprinted in U.S.C.C.A.N. 1695, 1698.

88. As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

89. A violation of Section 1692c(b) is an invasion of privacy.

90. As described herein, Oliphant violated Section 1692c(b).

91. As described herein, Oliphant invaded Plaintiff's privacy.

92. A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

93. A violation of Section 1692c(b) is a public disclosure of private facts.

94. As described herein, Oliphant violated Section 1692c(b).

95. As described herein, Oliphant publicly disclosed Plaintiff's private facts.

96. For the foregoing reasons, Oliphant violated 15 U.S.C. §§ 1692c(b) and 1692f and is liable to Plaintiff therefor.

**SECOND COUNT**
**Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)**

97. Plaintiff repeats and realleges paragraphs 1 to 60 as if fully restated herein.

98. The Plaintiff is a "consumer" as that term defined by the FDCPA.

99. CCLLC is a "debt collector" as that term is defined by the FDCPA.

100. Oliphant is a "debt collector" as that term is defined by the FDCPA.

101. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

102. The March Telephone Call is a "communication" as that term is defined by the FDCPA.

103. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

104. 15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

10

105. As described herein, Defendants violated 15 U.S.C. § 1692c(a)(2).

106. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

107. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

108. Defendants invaded Plaintiff's privacy.

109. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

110. 15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

111. As described herein, Defendants violated 15 U.S.C. § 1692c(c).

112. A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

113. A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

114. Defendants intruded upon Plaintiff's rights to solitude and seclusion.

115. A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

116. A violation of Section 1692c(c) is an interference with the attorney-client relationship.

117. Defendants interfered with Plaintiff's and her attorney's attorney-client relationship.

118. For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and are liable to Plaintiff therefor.

### THIRD COUNT
### Violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f

119. Plaintiff repeats and realleges paragraphs 1 to 60 as if fully restated herein.

120. Plaintiff is a "consumer" as that term is defined by the FDCPA.

121. AARS is a "debt collector" as that term is defined by the FDCPA.

122. The alleged debt is a "debt" as that term is defined by the FDCPA.

123. The March Telephone Call is a "communication" as that term is defined by the FDCPA.

124. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

125. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

126. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

127. 15 U.S.C. § 1692f prohibits the use of unfair or unconscionable means when collecting or attempting to collect any debt.

128. As described herein, Credit Control violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f when it failed to inform the Plaintiff on the March Telephone Call that it was calling on behalf of Oliphant and stated, or otherwise implied, CCLLC was calling on behalf of LendingClub.

129. CCLLC intentionally or negligently makes false, misleading and/or deceptive statements because consumers are more likely to pay an alleged debt to the original creditor versus

a party it does not know.

130. For the foregoing reasons, CCLLC violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f, and is liable to Plaintiff therefor.

## JURY DEMAND

131. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment be entered as follows:

a. Finding Defendants' actions violate the FDCPA; and

b. Awarding damages to Plaintiff pursuant to 15 U.S.C. § 1692k; and

c. Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

d. Awarding the costs of this action to Plaintiff; and

e. Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

f. Such other and further relief that the Court determines is just and proper.

DATED: August 28, 2023

                                                    Respectfully Submitted,
                                                    **HALVORSEN KLOTE**

By:    /s/ Joel S. Halvorsen
           Joel S. Halvorsen, #67032
           680 Craig Road, Suite 104
           St. Louis, MO  63141
           P: (314) 451-1314
           F: (314) 787-4323
           E: joel@hklawstl.com
           Attorneys for Plaintiff