UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

SONYA VILLARREAL,

    Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, et al.

    Defendants

CASE NO. 1:23-cv-01013

**DEFENDANT OLIPHANT FINANCIAL, LLC'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS**

Defendant Oliphant Financial, LLC ("Oliphant"), by and through its counsel, and hereby files this Motion for Judgment on the Pleadings and Motion to Dismiss (the "Motion"). In support, Oliphant states:

**INTRODUCTION**

1. Plaintiff filed suit against Oliphant and co-defendant Credit Control, LLC ("Credit Control"). on August 28, 2023, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA"). Doc. 1.

2. On November 22, 2023, Plaintiff executed a release agreement ("the Agreement") with Oliphant's co-Defendant, Credit Control. That release was further executed by Credit Control and thus went into effect on December 13, 2024. Doc. 21-1. Pursuant to the Agreement, Plaintiff agreed to release Oliphant and its related entities for all claims "arising from [Credit Control]'s actions or inactions to collect the Account." *Id.* ¶ 2. The provision states as follows:

> Villarreal hereby releases all claims and causes of action against "the Oliphant entities" arising from [Credit Control]'s actions or inactions to collect the Account. For the purposes of this paragraph, "The Oliphant entities" include Oliphant Financial, LLC, Accelerated Inventory Management, LLC, and Collins Asset Group, LLC. Villarreal does not release any claims or causes of action against the

Oliphant entities that arise from conduct other than [Credit Control]'s actions or inactions to collect the Account.

*Id*.

3.  Oliphant is accused of violating Plaintiff's privacy by communicating information to Credit Control concerning Plaintiff's account. Doc. 1 at 4; 7-9. None of the allegations allege that Oliphant had any communications with Plaintiff or directed any collection activities towards Plaintiff. *Id.* Plaintiff released any claims against Oliphant that arose from Credit Control's actions or inactions to collect the account; Plaintiff's claims against Oliphant could only arise from Credit Control's actions. Thus, Plaintiff's claims against Oliphant have been waived as a result of the Settlement Agreement between Plaintiff and Credit Control. Doc. 21-1. For these reasons, Plaintiff's claims against Oliphant should be dismissed, as they were released by Plaintiff in the Settlement Agreement with Credit Control.

4.  In the alternative, should the Court find the remaining claim is not waived by the Settlement Agreement, then this Court should dismiss Plaintiff's claims against Oliphant for a lack of Article III standing. There is no possible harm that Plaintiff could have incurred as a result of Oliphant placing the account with Credit Control, and multiple courts have rejected similar claims for a lack of Article III standing. For these reasons, this Court should grant this Motion and dismiss all claims against Oliphant.

## ARGUMENTS AND AUTHORITIES

### A. Standard of Law for Rule 12(b)(1)

5.  "Federal courts are courts of limited jurisdiction [and it] must [be] presume[d] that a suit lies outside this limited jurisdiction . . . ." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted). In reviewing jurisdiction under Rule 12(b)(1), the Court can look to "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record;

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Standing is part of the jurisdictional inquiry. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015).

6. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). To establish Article III standing, "a plaintiff must show: (i) that [he] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (*citing Lujan*, 504 U.S. at 560-61).

**B. Standard of Law for Rule 12(c).**

7. Rule 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *Mayne v. Omega Protein Inc.*, 370 F. App'x 510, 514 (5th Cir. 2010); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

8. Rule 12(c) motions are treated as a motion for judgment on the pleadings based on a failure to state a claim upon which relief can be granted. *Johnson v. Teva Pharms. USA, Inc.*, 758 F.3d 605, 610 (5th Cir. 2014) (noting that motions to dismiss under Rule 12(c) are governed by the same standards applicable to motions under Rule 12(b)(6)); *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013). The primary focus is whether, in the light most favorable to the plaintiff,

the complaint states a valid claim for relief. *United States v. 0.073 Acres of Land*, 705 F.3d 540, 543 (5th Cir. 2013); *Great Plains Tr.* Co., 313 F.3d at 312; *Hughes*, 278 F.3d at 420. "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Tr. Co.*, 313 F.3d at 312 (*quoting Hughes*, 278 F.3d at 420). In making such a determination, the court is restricted to the pleadings and must accept all allegations as true. *Hughes*, 278 F.3d at 420 (*citing St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)); *see Great Plains Tr. Co.*, 313 F.3d at 312. Nevertheless, the court will not accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Tr. Co.*, 313 F.3d at 313.

9. A claim may be dismissed under Rule 12(c) "if a successful affirmative defense appears on the face of the pleadings." *United States v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 U.S. Dist. LEXIS 185674, 2014 WL 11320447, at *3 (N.D. Tex. June 10, 2014) (*citing Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)), *aff'd*, 798 F.3d 265 (5th Cir. 2015); *accord Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003) (affirming the district court's dismissal of a claim on a judgment on the pleadings based on a successful affirmative defense).

   **C. The Settlement Agreement covers Plaintiff's claims against Oliphant, and therefore Plaintiff was waived her claims against Oliphant.**

10. The Settlement Agreement released all claims and causes of actions against "The Oliphant entities", which includes the Oliphant named in this lawsuit, which arose from Credit Control's actions or inactions to collection on the account at issue. Doc. 21-1 ¶ 2. Plaintiff, represented by counsel, agreed to these terms. *Id.*

11. There was no interaction between Plaintiff and Oliphant. Doc. 1. Oliphant did not have any communications or correspondence with Plaintiff and did not interact or communicate with

Plaintiff in any manner. *Id.* Any of Plaintiff's complaints concerning any debt collection activity, which the conduct regulated by the FDCPA, must necessarily have occurred through Credit Control. *Id*. Plaintiff has released all claims related to Oliphant that arose from any actions or inactions. Thus, Plaintiff has waived his claims against Oliphant, as alleged in the Complaint, because this conducted could only have occurred with the involvement of Credit Control. Under the allegations found in Plaintiff's Complaint, any communication between Oliphant and Credit Control were actions or inactions to collect the Account undertaken by Credit Control. Plaintiff has waived all claims resulting from any actions or inactions to collect the Account undertaken by Credit Control, and thus has waived her claims asserted against Oliphant in her Complaint.

12.     Settlement agreements are treated like any other contract, and the Court must look within the four corners of the document to determine the intention of the parties with regard to the scope of the settlement agreement. *Shelton v. Exxon Corp.*, 921 F.2d 595, 600 (5th Cir. 1991); *D&S Marine Serv., LLC v. Lyle Props., LLC*, No. 11-508, 2012 U.S. Dist. LEXIS 151321, at *8 (E.D. La. Oct. 22, 2012). Under federal common law, "[a] settlement agreement is a contract." *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). Thus, "a binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Chen v. Highland Cap. Mgmt., L.*P., No. 3:10-cv-1039, 2012 U.S. Dist. LEXIS 168420, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (cleaned up).

13.     Whether a written agreement is ambiguous or whether it clearly demonstrates the intent of the parties is a question of law. *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 948 (5th Cir. 1981), *cert. denied*, 454 U.S. 965, 102 S. Ct. 506, 70 L. Ed. 2d 380 (1981). The interpretation of an unambiguous instrument is a question of law. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). The applicable rule of contract construction is that unambiguous

language in a contract should be enforced as written, *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981), and objective intent rather than subjective intent controls, *id*. When there were sophisticated parties with able counsel on both sides the Court's task is to enforce the agreement as written. *Shelton v. Exxon Corp.*, 921 F.2d 595, 602-03 (5th Cir. 1991).

14.     The language of the Settlement Agreement indicates a desire for the Parties to "releases *all claims and causes of action*" against Oliphant "arising from [Credit Control]'s actions or inactions to collect the Account." Doc. 21-1 ¶ 2 (emphasis added). Any claim against Oliphant necessarily arises from Credit Control's actions or inactions, as Oliphant did not take any action towards Plaintiff without the involvement of Credit Control. Further, Plaintiff's Complaint states "the alleged debt was transferred, assigned, or otherwise placed with [Credit Control] *for the purposes of collection*." Doc. 1 ¶ 32 (emphasis added). Any actions taken by Oliphant arose from activities covered by the Settlement Agreement. Thus, all of Plaintiff's claims are waived by the terms of the Settlement Agreement, and therefore Plaintiff cannot bring a valid claim against Oliphant for the conduct alleged, as it was waived by the Settlement Agreement.

**D. Plaintiff lacks standing to sue Oliphant.**

15.     "As the party invoking federal jurisdiction," Plaintiff "bear[s] the burden of demonstrating" standing to bring the claims alleged. *TransUnion*, 141 S. Ct. at 2207. Primarily at issue here is the first element—injury in fact. To establish an injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest'" that goes beyond "conjectural or hypothetical." *Spokeo, Inc. v. Roberts*, 578 U.S. 330, 339 (2016) (*citing Lujan*, 504 U.S. at 560). To establish an injury in fact, the plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (*quoting Lujan*, 504 U.S. at 560). In other words, "if a risk

hasn't materialized, the plaintiff hasn't yet been injured." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022). Merely being subjected to at risk of future harm cannot support a suit for damages. *Id*. (citing *TransUnion*, 141 S.Ct. at 2210-11).

16. Plaintiff's claim concerning the third-party disclosure, allegedly occurring between Oliphant and Credit Control, is a re-skinned claim that multiple federal courts have found do not convey federal standing. Specifically, it is a new variant of the *Hunstein* case, a claim involving the use of letter vendors which has been making its way through the federal court system. *Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1248 (11th Cir. 2022) (finding no standing under letter vendor theory post *Trans Union*); *see Barclift v. Keystone Credit Servs., LLC*, No. 22-1925, 2024 U.S. App. LEXIS 3796, at *20 (3d Cir. Feb. 16, 2024) (finding no Article III standing on a *Hunstein* claim, holding a "[i]nformation transmission that neither travels beyond a private intermediary nor creates a sufficient likelihood of external dissemination cannot compare to a traditionally recognized harm that depends on the humiliating effects of public disclosure."); *see also In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57 (E.D.N.Y. 2021). These cases alleged violations of section 1692c(b) for alleging communicating consumer's debts to third parties, specifically the vendors used to print and mail letters. *Id.*

17. The Third Circuit is the most recent Circuit Court of Appeals to address the letter vendor theory. *Barclift,* 2024 U.S. App. LEXIS 3796, at *1. It provides an overview of the history leading up to the litigation, and provides an overview of the two competing standards used to determine standing post-*TransUnion*. *Id.* at 10-16 (discussing "element-for-element" approach compared to "kind of harm" approach in determining standing). However, under either standard, federals courts have all agreed that there is no Article III standing. *Id.* The Third Circuit stated, "[l]ike our sister circuits, we conclude that the harm from disclosures that remain functionally internal are not

closely related to those stemming from public ones." *Id*. at 17. The Third Circuit found no standing in *Barclift* because "[i]nformation transmission that neither travels beyond a private intermediary nor creates a sufficient likelihood of external dissemination cannot compare to a traditionally recognized harm that depends on the humiliating effects of public disclosure." *Id*. at 20. Other circuit courts have held the same. *Shields v. Prof'l Bureau of Collections of Md., Inc*., 55 F.4th 823, 829 (10th Cir. 2022); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023) ("The transmission of information to a single ministerial intermediary does not remotely resemble the publicity element of the only possibly relevant variant of the privacy tort."). Though the Fifth Circuit has not expressly addressed the *Hunstein* issue yet, the Fifth Circuit has stated that a plaintiff "need[s] to show that the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable. *Perez*, 45 F.4th at 822. Thus, it stands to reason that the Fifth Circuit would agree with the other circuit courts who have examined this issue on a kind of harm approach and found no Article III standing under the letter vendor theory.

18.     Plaintiff's claim against Oliphant is essentially the same as the letter vendor theories. Plaintiff alleges that Oliphant, a debt buyer, violated section 1692c(b) and section 1692f of the FDCPA when it communicated information to Credit Control, who alleged acted as a debt collector on behalf of Oliphant. Doc. 1 ¶¶ 32-34. Credit Control then communicated with Plaintiff, on behalf of Oliphant. *Id.* ¶ 35-36. Plaintiff alleges this violates section 1692c(b) of the FDCPA by disclosing "Plaintiff's personal and/or confidential information" to Credit Control. Doc. 1 at 7-9. This is the same as the letter vendor theories, especially given Plaintiff claims that "Oliphant has utilized a third-party vendor for these purposes thousands of times." *Id.* ¶ 75. Notably, Plaintiff does not allege that any one other than the parties to this lawsuit ever saw any information concerning Plaintiff. *Id*. Further, Plaintiff's harms are all presented as "justifiabl[e] fears"—

nowhere does Plaintiff actually allege any harm that resulted. *Perez*, 45 F.4th at 824 ("Remember: A plaintiff always must be able to point to a concrete injury to bring suit. *And if a risk hasn't materialized, the plaintiff hasn't yet been injured.*") (emphasis added).

19.     Numerous courts have rejected this same theory, involving a "[i]nformation transmission that neither travels beyond a private intermediary nor creates a sufficient likelihood of external dissemination." *Barclift*, 2024 U.S. App. LEXIS 3796, at *20; *Nabozny*, 84 F.4th at 736 ("The transmission of information to a single ministerial intermediary does not remotely resemble the publicity element of the only possibly relevant variant of the privacy tort."). There is no possible harm Plaintiff suffered that resulted merely from the placement of the account with Credit Control by Oliphant. Just as there is no standing in the letter vendor cases, this Court should find there is no standing in this present matter, and dismiss all claims against Oliphant.

## CONCLUSION

20.     All of Plaintiff's claims against Oliphant are waived under the terms of the Settlement Agreement that Plaintiff entered into with Credit Control. Plaintiff waived all claims relating to Credit Control's actions or inactions to collect the Account. Oliphant did not have any communication or contact with Plaintiff directly; any contact could have only come through Credit Control. Thus, these claims are waived. Finally, to the extent the claims are not waived, Plaintiff lacks Article III standing necessary to maintain this action in this Court. For these reasons, this Court should grant this Motion and dismiss all claims against Oliphant.

WHEREFORE, PREMISES CONSIDERED, Defendant Oliphant Financial, LLC, respectfully request this Court grant this present Motion and dismiss all claims against Oliphant with prejudice.

Respectfully submitted,

**MARTIN GOLDEN LYONS**
**WATTS MORGAN PLLC**

*/s/ Xerxes Martin*
EUGENE XERXES MARTIN, IV
Texas State Bar No. 24078928
Email: xmartin@mgl.law
JACOB MICHAEL BACH
Texas State Bar No. 24100919
Email: jbach@mgl.law
**MARTIN GOLDEN LYONS**
**WATTS MORGAN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

***COUNSEL FOR DEFENDANT***
***OLIPHANT FINANCIAL, LLC***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via **CM/ECF** system to all parties entitled to notice of the same on this 26th day of February 2024.

*/s/ Xerxes Martin*
EUGENE XERXES MARTIN, IV